UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| KAREN DOOLEY, ) <br> ) <br> Petitioner, ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) | Case No. 13-CV-2216 |

## OPINION

On October 3, 2013, Petitioner, Karen Dooley, filed this Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (#1). Respondent, United States of America (the government), filed its Response (#5) on April 4, 2014. For the following reasons, Petitioner's Motion (#1) is DENIED.

### BACKGROUND

On February 18, 2011, Petitioner was charged via information with nine counts, specifically: (1) conspiracy to commit access device fraud; (2) aggravated identity theft; (3) access device fraud; (4) aggravated identity theft; (5) mail fraud; (6) aggravated identity theft; (7) food stamp fraud; (8) social security fraud; and (9) theft of government funds. That same day Petitioner appeared in front of Magistrate Judge David G. Bernthal with her attorney, Assistant Federal Defender John C. Taylor. Assistant U.S. Attorney Ronda Coleman was present for the government. A written Waiver of Indictment (#4) was signed by Petitioner and filed with the court. The court accepted the waiver as knowing and voluntary. Petitioner then requested a change of plea hearing to be held that day. Petitioner signed and filed a Notice and Consent Form (#6) to plead guilty before Magistrate Judge Bernthal. Petitioner entered into an open plea to each count and no written plea agreement was filed.

On February 22, 2011, Judge Bernthal filed a Report and Recommendation (#11) on the guilty plea which found that the plea was knowing and voluntary as to each count and that the offenses charged were supported by an independent factual basis containing each of the essential elements of the offense. This court entered an Order (#12) adopting the Report and Recommendation on March 30, 2011. On May 27, 2011, this court sentenced Petitioner to 96 months in the Federal Bureau of Prisons (BOP), consisting of 24 months each on counts 1, 3, 5, 7, 8, and 9, to run concurrent to each other, and 24 months each on counts 2, 4, and 6 to run consecutive to each other and to counts 1, 3, 5, 7, 8, and 9.

On July 27, 2012, the Seventh Circuit vacated Petitioner's sentence and remanded to this court for resentencing for the court to consider Application Note 2(B) to §5G1.2 of the United States Sentencing Guidelines (U.S.S.G.) and the factors of 18 U.S.C. § 3553(a). *United States v. Dooley*, 688 F.3d 318, 321 (7th Cir. 2012). On January 8, 2013, Petitioner was resentenced to the same sentence. The Seventh Circuit affirmed the sentence on August 9, 2013. Petitioner filed this motion (#1) on October 3, 2013, raising four grounds for relief: (1) her attorney was ineffective for not filing a motion to suppress statements she made to law enforcement without an attorney present; (2) her attorney was ineffective for failing to "perform, advise, or" explore plea possibilities and never explained to her the benefits, risk, or significance of a plea agreement at any time; (3) her guilty plea was not knowing or voluntary; and (4) her attorney was ineffective on appeal. The government's response was filed April 4, 2014.

## ANALYSIS

Petitioner's § 2255 claims are based on the Sixth Amendment to the United States Constitution. The Seventh Circuit recently addressed the general legal standards governing habeas

claims under the Sixth Amendment for ineffective assistance:

> "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice. *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997). The Sixth Amendment to the Constitution provides that '[i]n all criminal prosecutions, the accused shall enjoy the right... to have the Assistance of Counsel for his defence.' U.S. CONST. amend. VI. This right to assistance of counsel encompasses the right to effective assistance of counsel. *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009) (citations omitted).
>
> A party asserting ineffective assistance of counsel bears the burden of establishing two elements: (1) that his trial counsel's performance fell below objective standards for reasonably effective representation, and (2) that counsel's deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009).
>
> To satisfy the first element of the *Strickland* test, [the petitioner] must direct the court to specific acts or omissions by his counsel. *Wyatt*, 574 F.3d at 458 (citation omitted). In that context, the court considers whether in light of all the circumstances counsel's performance was outside the wide range of professionally competent assistance. *Id.* The court's assessment of counsel's performance is 'highly deferential [,]... indulg[ing] a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance...' See *Strickland*, 466 U.S. at 689-90, 104 S.Ct. 2052; accord *Wyatt*, 574 F.3d at 458. Further, counsel's performance is to be evaluated in light of the discretion properly accorded an attorney to develop appropriate trial strategies according to the attorney's independent judgment, given the facts of the case, at least some of which may not be reflected in the trial record. See *Strickland*, 466 U.S. at 689-90, 104 S.Ct. 2052. Courts are admonished not to become 'Monday morning quarterback[s]' in evaluating counsel's performance. *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

To satisfy the second *Strickland* element, [the petitioner] must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different, such that the proceedings were fundamentally unfair or unreliable. *Jones*, 635 F.3d at 915 (citations omitted); *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006). 'A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome.' *Adams*, 453 F.3d at 435 (citing *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052)." *Blake v. United States*, 723 F.3d 878-79 (7th Cir. 2013).

*Ground One: Counsel Was Ineffective for Failure to File a Motion to Suppress Her Statements to Law Enforcement Without an Attorney Present*

Petitioner argues in her motion that her conviction was obtained by a "violation of the privilege against self-incrimination" because she did not know that the Fifth Amendment to the United States Constitution barred the government from "compelling criminal defendants to testify against themselves." Specifically, Petitioner states that she had no attorney present when she sat

4

down with police and AUSA Ronda Coleman and Champaign detective Johnson stated it would be in Petitioner's best interest and favor to admit her crimes "so she would not get much time." Petitioner states that she complied and admitted to her crimes "even though I told them I wanted an attorney present." Petitioner had not been indicted at this time and did not know it would be charged as a federal offense. Petitioner states she was deceived. Petitioner claims she told attorney Taylor about the interview and he did nothing, even though she asked him to file a motion to suppress. The government construes Petitioner's claim as one for ineffective assistance of counsel for failure to file the motion to suppress.

The government argues that Petitioner has provided a grossly inaccurate description of her interview with law enforcement. The government contends that, based on the actual facts of what occurred during the interview, any move to suppress the statements would be a losing argument, and thus it would not be ineffective for counsel to fail to file a motion to suppress. The government states that, prior to the interview, Special Agent Matt McWilliams spoke to Ed Pirano, an attorney who indicated he had spoken with Petitioner and her co-defendant and that he (Pirano) had advised them to be cooperative with agents. Petitioner and her co-defendant met with law enforcement and AUSA Coleman at the federal courthouse and neither party was in handcuffs. Further, the door to the conference room was not locked and Petitioner had not been placed under arrest. Both parties were advised of their rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), per Secret Service Form (SSP) 1737B, which was attached to the government's Response as Exhibit 1. On the signed form, Petitioner acknowledged that she had read the warning of *Miranda* rights, that the rights had been read to her, and that she understood what her rights were. Petitioner also signed a waiver form, which stated:

"I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or force of any kind has been used against me. I hereby voluntarily and intentionally waive my right to remain silent and my right to have an attorney at this time. I am willing to make a statement and answer questions."

At the conclusion of the interview, Petitioner and her co-defendant left the courthouse on their own accord. Petitioner's counsel attorney John Taylor was given McWilliams' report as part of discovery and would have been aware of the circumstances of the interview. Counsel would also have been aware that Petitioner had signed a written *Miranda* waiver wherein she waived her right to counsel.

Trial counsel's performance will be found to be objectively reasonable where trial counsel reasonably believes that a motion to suppress would have little to no chance of success. *Koons v. United States*, 639 F.3d 348, 354 (7th Cir. 2011). Failure to pursue a futile motion to suppress does not constitute ineffective assistance. See *United States v. Jackson*, 103 F.3d 561, 575 (7th Cir. 1996). Here, Petitioner signed a waiver of her *Miranda* rights. In a case where a defendant has signed a waiver of his or her *Miranda* rights, as here, the waiver inquiry has two distinct dimensions: it must be voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and it must be made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *United States v. Lee*, 618 F.3d 667, 676 (7th Cir. 2010). The voluntariness of a confession is a question of fact for the district court, and the Seventh Circuit has "held that a confession is voluntary if, under all the circumstances, it is the 'product of a rational intellect and free will and not the result of physical

6

abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will.'" *Lee*, 618 F.3d at 676, quoting *United States v. Carson*, 582 F.3d 827, 833 (7th Cir. 2009). The relevant factors to consider when determining whether a confession is coerced include: whether the defendant received *Miranda* warnings; the defendant's age, intelligence level, education and mental state; the conditions under which the defendant was interrogated (duration, environment, and access to restroom facilities and food); and whether the defendant was physically punished. *Lee*, 618 F.3d at 676, n.2.

The court agrees with the government that there is no evidence that Petitioner's statements were not voluntary. Petitioner was not in custody at the time the statements were made. Petitioner has presented no specific evidence of intimidation, coercion, or deception beyond self-serving general statements. There is no evidence she was mistreated or that she was held for a lengthy period of time or denied food and access to the restroom. She was allowed to arrive and leave the interview on her own accord. There is no evidence Petitioner was physically punished in any way. A review of the PSR indicates Petitioner was 29 years old with some college education. The court believes that Petitioner was fully capable of understanding her situation and that the totality of the circumstances demonstrate that Petitioner waived her rights under *Miranda* freely and voluntarily and that she understood the implications of such a waiver, which she acknowledged by signing said waiver. See *Lee*, 618 F.3d at 676. Thus, the court finds that it is likely that any motion to suppress her statements would have been unsuccessful, and it was sound trial strategy and within the wide range of reasonable professional assistance for counsel to not file such a motion. Therefore, counsel was not ineffective for failing to file a motion to suppress and Petitioner's motion on this ground must be DENIED.

*Grounds Two and Three: Counsel was Ineffective for Failing to Explore Plea Possibilities and Never Explained the Risks and Benefits of a Plea and Petitioner's Plea Was Induced, Involuntary, and Not Made With Understanding of the Consequences of the Plea*

Petitioner next claims that her counsel was ineffective for failing to explore plea possibilities with her. Petitioner's explanation of ground two in her "Declaration" is confusing and does not seem to directly address her claim, but contains various accusations of counsel Taylor's ineffectiveness, such as failure to meet with her more than twice and his general inattentiveness and his failure to object to certain items in the PSR. In ground three, Petitioner argues that counsel never explained the risks and benefits of a plea and that her plea was involuntary and not made with an understanding of the plea's consequences. Petitioner claims counsel told her that with an open plea she would get no more than 48 months, but that, if she had known she would be sentenced to the 96 months she ultimately received, she never would have plead guilty and would have taken the matter to trial.

First, with regard to ground two and her counsel's alleged failure to explore plea deal possibilities, the United States Supreme Court has recognized that "the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Missouri v. Frye*, 132 S. Ct. 1399, 1406 (2012), *quoting Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (2010). In *Frye*, the Supreme Court held that defense counsel therefore have a duty "to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye*, 132 S. Ct. at 1408; *see also Lafler v. Cooper*, 132 S. Ct. 1376, 1387 (2012) (noting that "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it"); *United States v. Taylor*, 2013 WL 2470259, at *6 (N.D. Ind. 2013). However, a defendant does not have a right to be offered a plea,

or to have a judge accept it. *Frye*, 132 S. Ct. at 1410; *Lafler*, 132 S. Ct. at 1387; *Taylor*, 2013 WL 2470259, at *6.

AUSA Coleman, the same attorney who prosecuted Petitioner in the criminal case, filed the government's Response in this case. AUSA Coleman states in her Response:

> "In this case, there was no potential plea relayed to defense counsel. As an officer of the Court, I would state that I did not offer any plea agreement to Attorney John Taylor. Instead, the only potential plea was an open plea or to proceed to trial."

The court agrees with the government that, where there is no plea offer to relay and Petitioner exercised her right to voluntarily plead guilty, Petitioner has failed to show that counsel's performance was deficient or she would have proceeded to trial. It is true that under *Lafler* a defense attorney must communicate an offered plea to a defendant. However, in this case there was no plea offered by the government for counsel to communicate, and, because a defendant does not have a right to be offered a plea, counsel cannot be considered ineffective for failing to relay a non-existent offer that Petitioner was not entitled to in the first place. See *Frye*, 132 S. Ct. at 1410; *Lafler*, 132 S. Ct. at 1387; *Taylor*, 2013 WL 2470259, at *6. Therefore, Petitioner's claim on ground two is DENIED.

Petitioner's third ground is that the plea was involuntary and made without "understanding of the charge or consequence" due to counsel "rushing" her into the agreement and giving her bad advice. Petitioner plead guilty in front of Magistrate Judge Bernthal pursuant to Rule 11 of the Federal Rules of Criminal Procedure. When the court conducts a thorough Rule 11 colloquy, the petitioner challenging the validity of the plea faces an "uphill battle." See *United States v. White*, 597 F.3d 863, 867 (7th Cir. 2010) ("But if (as here) the district court conducted a thorough Rule 11

9

colloquy, the defendant seeking withdrawal faces an 'uphill battle.'"). A defendant may withdraw a plea if it was not entered into knowingly, voluntarily, and intelligently with sufficient awareness of the relevant circumstances and likely consequences. *White*, 597 F.3d at 868. Voluntary responses made by a defendant under oath before an examining judge, however, are binding and a plea of guilty after a Rule 11 colloquy enjoys a presumption of verity. *White*, 597 F.3d at 868.

Here, Magistrate Judge Bernthal conducted an extensive Rule 11 colloquy with Petitioner when she pleaded guilty on February 18, 2011. Judge Bernthal read through all the elements of the offenses charged with Petitioner, who indicated in no uncertain terms that she understood the charges. Judge Bernthal carefully explained the process of an indictment and explained what Petitioner was surrendering by waiving her right to an indictment. Petitioner indicated she understood and was waiving the right. Petitioner indicated that she had not been threatened or forced into pleading guilty nor had any promises about her sentence been made to her. Judge Bernthal further explained to Petitioner her right to withdraw a plea of guilty and how she could not withdraw the plea simply because she was unhappy with either a ruling made by the sentencing judge in regard to her sentence or with the calculations for her sentence under the guidelines. Petitioner indicated she understood. Judge Bernthal went over the factual basis for the plea with Petitioner, who indicated the factual basis was correct. Judge Bernthal found that there was a sufficient factual basis and that Petitioner had indicated her guilt as to the charges. Having gone through an extensive colloquy with Petitioner and observed her demeanor and responses to his questions, Judge Bernthal concluded:

> "[Petitioner]'s been forthright and unhesitating in her responses. I'm satisfied that she knows what she's doing. She knows that she's giving up valuable

constitutional rights; but she's done this knowingly, voluntarily; not been coerced, threatened, or otherwise intimidated into doing this. So – and, also, she knows the elements of the offense to which the United States would have to prove beyond a reasonable doubt. She understands the maximum penalty."

The court finds, based on the review of the transcript of the plea hearing and Rule 11 colloquy, that Petitioner cannot show that her plea was involuntarily and unknowingly entered.

Further, to the extent Petitioner argues counsel was ineffective for telling her she would not receive more than 48 months, when she in actuality received 96, her claim must also fail. To succeed on her ineffective assistance claim, Petitioner must show deficient performance and prejudice: namely that counsel grossly mischaracterized the sentencing consequences of entering into the open plea and that, but for counsel's ineffective assistance, Petitioner would have proceeded to trial. See *Thompson v. United States*, 732 F.3d 826, 830 (7th Cir. 2013). Petitioner cannot make such a showing in this case. During the Rule 11 colloquy, Judge Bernthal explained to Petitioner the possible maximum penalties, for each offense to which Petitioner was pleading guilty. Judge Bernthal also patiently explained how some of the offenses would have to run consecutive to the other offenses, and what "consecutive" meant in this context. Petitioner indicated she fully understood. The following exchange occurred during the colloquy:

> "Q. [Judge Bernthal]: Now, as I mentioned earlier, Congress has established penalties, set a maximum possible penalty for each of those offenses, and we covered the – we discussed that charge by charge earlier, but I'm happy to go back over that again if you want me to. You just tell me if

> you need me to; and, if so, I'll do it. And if you remember them and don't need them repeated, I can move on.

A. [Petitioner]: You can move on, Your Honor.

Q.: All right. Do you feel you understand –

A.: Yes, Your Honor.

Q.: – what the maximum possible penalties are?

A.: Yes.

Q.: [Petitioner], has anybody threatened you or threatened anybody else or forced you in any way to plead guilty to these charges?

A.: No, Your Honor.

Q.: And has anybody, including your own attorney, made any promise or guarantee as to what your sentence will be or will not be?

A.: No, Your Honor.

Q.: Presumably, or possibly you may have discussed – well, just as we did – what's the maximum, what might happen; but I'm concerned that nobody has said to you, 'Look, if you plead guilty, then I guarantee you that you will not get this sentence,' or, 'I guarantee you will get that sentence.' That's – am I correct that's not happened?

A.: No, sir.

Q.: Pardon?

A.: No. It hasn't happened.

> Q.: It hasn't happened?
>
> A.: No.
>
> Q.: Okay. Very Good."

Judge Bernthal then went on to inform Petitioner about the advisory sentencing guideline process that the district court would use to calculate her sentence. Judge Bernthal stated that "the judge won't have to pick what the government recommends or what Mr. Taylor recommends on your behalf" and that "[t]he judge is free to make his own decision as to what your sentence is going to be." Judge Bernthal further explained that Petitioner could not withdraw her plea if she was simply unhappy with the sentence and that she could not "throw up [her] hands and say, 'Whoa Judge. You know, if you're going to do that, I'll just withdraw my guilty plea, and I want my trial,' because you just wouldn't be allowed to do that. Do you understand that?" Petitioner answered that she understood. Judge Bernthal found that Petitioner understood the maximum penalty.

Thus, based on the above, Petitioner cannot show that counsel's alleged failure to clarify the sentencing consequences of pleading guilty to the charges was a "decisive factor" in her decision to forgo trial because Judge Bernthal's explanation of the sentencing process at her plea colloquy removed any possible prejudice of counsel's advice. See *Thompson*, 732 F.3d at 830. Petitioner argues that counsel told her she would receive 48 months, but she completely ignores the extensive and numerous efforts of Judge Bernthal during the plea hearing to cure any illusion that she was guaranteed or had been promised a binding sentence for her open plea. See *Thompson*, 732 F.3d at 831. Because Petitioner suffered no prejudice from counsel's advice, counsel was not ineffective. Therefore, Petitioner's motion on ground three must be DENIED.

*Ground Four: Improper Argument By Counsel In Regard to Filing an Appeal*

Petitioner next makes a confusing and not altogether clear claim regarding ineffective assistance of attorney Taylor on appeal. Petitioner alleges counsel made an improper argument on appeal. Petitioner alleges that counsel did not want to file an appeal and "retaliated against [Petitioner], and worked against [Petitioner's] best interest." Petitioner alleges that although the appeals court told counsel what issues to raise, counsel failed to raise those issues. The government argues that Petitioner has made a claim of ineffective assistance unsupported by actual proof.

On appeal, counsel filed a motion to withdraw as appointed counsel, citing *Anders v. California*, 386 U.S. 738 (1967). Counsel stated that he could find no nonfrivolous issues to raise in the appeal. The Seventh Circuit issued an order denying counsel's motion to withdraw on December 5, 2011. The court of appeals noted that counsel did identify one potential issue for appeal: whether Petitioner could argue that a total sentence of 96 months in prison was unreasonable. The court then noted that counsel asserted such a claim would be frivolous because, in his view, 96 months was within the guidelines imprisonment range and he could not think of a basis for attacking the presumption of reasonableness applied to a guidelines range.

The Seventh Circuit disagreed, finding that counsel did not tell the court *how* he arrived at the conclusion that 96 months was within the guidelines range. The Seventh Circuit found counsel's assumption that the court was required to impose consecutive prison terms on each of the aggravated identity theft counts (18 U.S.C. § 1028A) to be contradicted by his assertion at sentencing that they should be imposed concurrently. The court noted at sentencing that the district court correctly recognized its discretion to impose either consecutive or concurrent sentences on the § 1028A counts, but that neither the court nor the parties cited to the factors set out in Comment Note 2(B) of §5G1.2 of the United States Sentencing Guidelines in determining whether to impose concurrent

14

or consecutive sentences on the § 1028A convictions. The Seventh Circuit noted that only once before had it commented on a sentencing court's failure to reference §5G1.2 or the Sentencing Commission's list of factors in that guideline. Further, the court acknowledged that it had never decided whether the guidelines range for a defendant convicted of multiple aggravated identity theft counts includes only one consecutive term or the maximum number of terms allowed, nor had the court addressed how failure to consider the Commission's guidance might impact its answer on that question. Without expressing any opinions on the merits, the court determined that such a claim on appeal would not be frivolous and that Petitioner would be entitled to briefing on the matter by counsel.

Counsel filed an appellate brief on March 5, 2012, making the argument as instructed by the Seventh Circuit. The Seventh Circuit vacated Petitioner's sentence and remanded for resentencing. *Dooley*, 688 F.3d at 321. The court of appeals noted that counsel did not remind the district court about the role Note 2(B) played in choosing between concurrent and consecutive sentences, which made the district court's omission understandable, but given that § 1028A(b)(4) made consideration of Note 2(B) essential to the statutory process, found that plain error had occurred. *Dooley*, 688 F.3d at 321. The Seventh Circuit speculated that perhaps the district court privately considered the 2(B) factors, but found plain error because the court did not say so or address all of its considerations on the record. *Dooley*, 688 F.3d at 321. The court of appeals remanded to the district court. The Seventh Circuit noted that this court may yet conclude that consecutive sentences were still appropriate, but that the court should only impose such sentences after first considering Note 2(B) and the factors in 18 U.S.C. § 3553(a). *Dooley*, 688 F.3d at 321. On remand, and after consideration of the appropriate factors of Note 2(B), this court again sentenced Petitioner to 96 months in the

BOP on January 8, 2013. Petitioner's sentence was affirmed by the Seventh Circuit on July 18, 2013.

Petitioner's claim that counsel was ineffective on appeal is without merit. The court does not find counsel's performance to be objectively unreasonable despite the Seventh Circuit's denial of the motion to withdraw and *Anders* brief. The Seventh Circuit noted in its order that it had never decided whether the guidelines range for a defendant convicted of multiple aggravated identity theft counts included only one consecutive term or the maximum number of terms allowed, nor had the court addressed how failure to consider the Commission's guidance might impact its answer on that question. Following the directive of the court of appeals, counsel filed an appellate brief making such an argument and succeeded in having Petitioner's sentence vacated and remanded for resentencing to this court. Even if attorney Taylor's determination that there were no nonfrivolous issues to raise on appeal was in error, this court must indulge the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. See *Strickland*, 466 U.S. at 689-90. Under the circumstances and facts of this case, the court finds counsel's conduct did fall within that reasonable range.

Further, Petitioner has made an argument that, at its core, suggests that counsel "retaliated" against her and "worked against her best interest" on appeal, without citing any evidence or any specific example of such retaliation. As noted by the government, a petitioner alleging ineffective assistance of counsel in her § 2255 motion must present some "actual proof of [her] allegations." *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005). Petitioner has presented no evidence that counsel "retaliated" against her on appeal or "worked against her best interest" and thus "cannot meet the threshold requirement for securing an evidentiary hearing" on her § 2255 motion. *Fuller*,

398 F.3d at 652. Therefore, Petitioner's motion must be DENIED on this ground.

CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, this court denies a certificate of appealability in this case (COA). A district court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In *Barefoot v. Estelle*, 463 U.S. 880 (1983), *superseded on other grounds by* 28 U.S.C. § 2253(c)(2), the Supreme Court set forth the methodology to be used in evaluating a request for a COA. A petitioner need not demonstrate that he should prevail on the merits, but rather must demonstrate that the issues are debatable among jurists of reason, that the court could resolve the issues in a different manner, or that the questions are adequate to deserve encouragement to proceed further. *Barefoot*, 463 U.S. at 893, n. 4. The court believes that Petitioner has not demonstrated that the issues raised are debatable among jurists of reason. The court would not resolve the issues in a different manner nor does it believe the questions are adequate to deserve encouragement to proceed further. Petitioner has not made a substantial showing of the denial of a constitutional right. A COA is DENIED in this case.

IT IS THEREFORE ORDERED:

(1) Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (#1) is DENIED.

(2) A certificate of appealability is DENIED.

(3) This case is terminated.

ENTERED this 28th day of April, 2014
**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE